## HARRISON v. UNITED STATES.
### No. 2278.

District Court, M. D. Pennsylvania.
May 20, 1931.

R. L. Levy and Frank T. Butler, both of Scranton, Pa., for plaintiff.

Andrew B. Dunsmore, U. S. Atty., of Wellsboro, Pa., A. A. Vosburg, Asst. U. S. Atty., of Scranton, Pa., and John M. Dervin, Regional Attorney, United States Veterans' Bureau, of Philadelphia, Pa.

WATSON, District Judge.

This is an action on a policy of war risk insurance. The case was tried before a jury, and resulted in a verdict for the plaintiff. The defendant moved for a new trial, which motion is now before the court for disposition.

There was evidence that the plaintiff entered the United States Army May 14, 1918, and was in such service until October 7, 1918; that, on or about May 17, 1918, the plaintiff was granted war risk insurance in

the sum of $10,000, pursuant to the act of Congress; that the insurance was made payable to him in installments of $57.50 per month for a period of 240 months in case of his being totally and permanently disabled while the insurance was in force; that the insurance was in force up to December 1, 1918; that; in August, 1918, the plaintiff was in the service in Waco, Tex.; that he lost weight and strength; that he was taken from the ranks by medical officers and sent to a base hospital; that he was thereafter placed in a convalescent company; that he continued to grow weaker and had night sweats; that he was discharged from the military service October 7, 1918, for the reason that he had hyperthyroidism; that, on leaving the Army, he started for his home in Scranton, Pa.; that he was in a weakened condition, and stopped in Buffalo, N. Y., on his way; that, in Buffalo, his weakened condition continued, and he remained there in bed for ten days, when he continued on his trip to Scranton; that, on reaching Scranton, he was compelled to go to bed; and was required to remain there until December 25th of that year; that in February, 1919, he went to Philadelphia, where he worked part time, and was discharged after six weeks, because his physical condition did not permit him to do the work required of him; that in June, 1919, he went to Erie, Pa., where he worked answering a telephone for two weeks; that in September, 1919, he went to Syracuse, N. Y., and attempted to work; that his condition grew worse, and he had swelling of the legs and feet; that he was in bed in Syracuse for about two months; that he was in the hospital in Syracuse for two months; that in 1920 and 1921, for about one year, he was in vocational training in Syracuse; that his health grew worse, he lost weight, coughed, and raised blood; that in 1922 he was sent to the Daily Rest Sanitorium, Orwell, N. Y., where the patients were tubercular; that he was sent to Mt. Alto Sanitorium, where the patients were tubercular; that he was sent to Pocono Pines Sanatorium, where he remained for about fourteen months; that, since his discharge from the Army, he has attempted to work, but hemorrhages started, and he had to stop work; that he has not been able to follow continuously any gainful occupation of any kind; and that he had an active tuberculosis disease in 1924.

The defendant filed several reasons for a new trial. In the first, second, third and fourth reasons, the defendant relies upon the refusal of the court to charge the jury as requested in defendant's first, third, fourth, and fifth points.

The first point was a request to charge the jury that, under all the evidence, the verdict should be for the defendant. There was ample evidence to show that the plaintiff was totally and permanently disabled during the life of his policy of insurance, to the extent that he could not engage in any occupation continuously without impairment to his health.

The third and fourth points were in the following language:

"3rd. The discharge of the plaintiff from the army offered in evidence by the plaintiff shows that the army doctors did not find him to be then suffering from tuberculosis, and the plaintiff has called no physician who attended him before the date of discharge to testify to the existence of this disease prior to that time. If the jury find that the army doctors were correct in this diagnosis then the plaintiff is not entitled to a verdict.

"4th. The physician who attended the plaintiff shortly after he left the army, and again in 1923, was of the opinion and so testified when called by the plaintiff, that when he first attended him he was suffering from the Flu, and later he diagnosed the case as Bronchitis; and he also testified that he did not suspect at any time while he treated the plaintiff, that Harrison was subject to the disease known as tuberculosis. If the jury believe that this physician called by the plaintiff was correct in his testimony, then the plaintiff is not entitled to recover."

Here the court was requested to charge in direct conflict with section 200 of the World War Veterans' Act as amended by Act July 2, 1926, § 7 (U. S. Code Annotated, title 38, § 471), which provides inter alia as follows:

"That an ex-service man who is shown to have or, if deceased, to have had, prior to January 1, 1925, neuro-psychiatric disease, spinal meningitis, an active. tuberculosis disease, paralysis agitans, encephalitis lethargica, or amoebic dysentery developing a 10 per centum degree of disability or more in accordance with the provisions of section 474 of this title, shall be presumed to have acquired his disability in such service between April 6, 1917, and July 2, 1921, * * * and said presumption shall be conclusive in cases of active tuberculosis disease."

This section of the World War Veterans' Act applies to actions for war risk insurance. Brandaw v. United States (C. C. A.) 35 F.(2d) 181. There was evidence that

the plaintiff did have an active tuberculosis disease prior to January 1, 1925. The court could not properly have charged the jury as requested in the third and fourth points.

The court charged the jury twice in the language of the fifth point by reading the point to the jury, so that the defendant can have no complaint for that reason.

The fifth reason for a new trial reads as follows:

"Fifth: The learned Court erred in refusing to allow counsel for the defendant to ask a physician for an opinion based upon testimony which the physician had heard in court."

The part of the testimony to which the defendant probably refers is the following:

"By Mr. Dervin: Q. I am going to ask the question I asked originally. Have you heard the evidence in this case? A. Yes, sir.

"Q. Have you heard the plaintiff testify? A. Yes, sir.

"Q. Were you sitting in a position where you heard every word of the statements? A. Yes, sir.

"Q. From all the evidence in this case, is it your opinion that the plaintiff was permanently and totally disabled subsequent to his enlistment in the army and prior to Dec. 1, 1918?

"By Mr. Levy: The question is objected to as incompetent. (Objection sustained.)"

The question was objectionable, if for no other reason than that it failed to include, "to the extent that he could not engage in any gainful occupation continuously without impairment to his health," or like language. The question did not state the facts clearly, was improperly framed, and the objection was properly sustained.

The sixth and seventh reasons are without merit, and require no comment.

In this case, there appears ample evidence to support the verdict of the jury. There was testimony that the plaintiff had an active tuberculosis disease prior to January 1, 1925, and that he was permanently and totally disabled when his contract of insurance was in force, to the extent that he could not engage in any gainful employment continuously without impairment to his health, and the case was fairly submitted. The reasons for new trial should be dismissed, and a new trial refused.

Now, May 20, 1931, rule for a new trial is discharged.